# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

STEVEN JAMES MORALES,

                              Petitioner,

   v.

TIM GARRETT, et al.,

                            Respondents.

Case No. 2:18-cv-00583-GMN-CWH

**ORDER**

Steven James Morales is a Nevada prisoner who was convicted of multiple counts of burglary with use of a deadly weapon, robbery with use of a deadly weapon, first-degree and second-degree kidnapping with use of a deadly weapon and failing to stop on signal of a police officer and is serving an aggregate term of 27 years to life with the possibility of parole. Morales filed an amended petition for writ of habeas corpus (ECF No. 12) under 18 U.S.C. § 2254, alleging claims of due process violations for insufficient evidence, an Eighth Amendment violation for disproportionate sentence, as well as ineffective assistance of trial and appellate counsel. The Court denies the remaining grounds of Morales's petition, denies him a certificate of appealability, and directs the clerk to enter judgment accordingly.

## I. Background

### a. Factual Background

In May 2008, Morales entered a Walgreen's in Henderson, Nevada and detained four employees at gunpoint. ECF No. 42-13 at 7. He threatened to kill the employees and took the store's stock of Oxycontin. *Id.* at 8. Morales fled the store, drove away with his lights off, and ignored traffic laws. *Id.* When pursued by police, Morales did not stop. *Id.* After one of his tires went flat, Morales pulled into a residential neighborhood and parked his car. *Id.* He fled on foot into the residential neighborhood. *Id.*

Morales crawled into the window of a home. *Id.* Three adults, Edward Ducsak ("Ducsak'), Marlynn Larivee ("Larivee"), and Lucresia Oyarce ("Oyarce"), as well as four

children were inside the residence. *Id*.  Morales held the individuals at gun point, stopped them from contacting the police, and threatened them. *Id*. at 8-9.  Morales told the adults that he needed to get out of there. *Id*. at 9.  Ducsak told Morales that he had four cars out front and that he could have any of them if he would leave them alone. *Id*.  Morales walked Ducsak into the kitchen to get the keys, grabbed the keys from Ducsak, and headed to the front door. *Id*.  Morales stated that he could not leave because then they would call the police. *Id*.  Ducsak told Morales that he could take him, but to leave the women and children alone. *Id*.  When exiting the house with Ducsak, Morales saw police cars at the end of the street and stated that they were not going anywhere. *Id*.  After a physical altercation, two of the adults overpowered Morales and took him to the police waiting outside of the residence. *Id*.

### b. Procedural History

Following his conviction, Morales appealed, and the Nevada Supreme Court affirmed the judgment of conviction. ECF 42-16.  In May 2011, Morales filed his first state petition for writ of habeas corpus, which the state court denied. ECF Nos. 43-20, 43-24.  On appeal, the Nevada Supreme Court reversed and remanded for the appointment of counsel finding that the failure to appoint post-conviction counsel prevented meaningful litigation. ECF No. 44-7.  The state court appointed counsel and Morales filed his second state petition, which the state court denied. ECF No. 44-12, 44-27.  The Nevada Supreme Court affirmed in part, reversed in part, and remanded for an evidentiary hearing on certain claims. ECF No. 45-3.

In November 2014, Morales filed his third state petition, which the state court denied following an evidentiary hearing. ECF No. 45-18.  On appeal, the Nevada Supreme Court affirmed in part, reversed in part and remanded ordering the lower court to vacate the false-imprisonment charge from Morales's judgment of conviction. ECF No. 46-5.

On March 30, 2018, Morales initiated this federal habeas proceeding *pro se*. ECF No. 1.  After appointment of counsel, Morales filed his first amended petition on February 4, 2019. ECF Nos. 6, 12.  Morales requested a stay and abeyance to exhaust claims in state court. ECF No. 20.  The state court denied his fourth state petition and the Nevada Supreme Court affirmed finding his petition was untimely and successive. ECF No. 48-6.  The Court granted Respondents'

motion to dismiss, in part, dismissing Ground 4 and the portion of Ground 6(A) alleging the Nevada Supreme Court erred when it failed to instruct the state district court to resentence Morales after remanding with instructions to vacate Count 3 as procedurally defaulted. ECF No. 59. The Court deferred ruling whether Morales can establish cause and prejudice to overcome the defaults of Grounds 2, 5(M), 8, 9, and 10. *Id*.

## II.   Governing Standards of Review

### a.   Review under the Antiterrorism and Effective Death Penalty Act

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (first quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and then citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75.

The Supreme Court has instructed that "[a] state court's determination that a claim lacks

merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### b.  Standard for Evaluating an Ineffective Assistance of Counsel Claims

In *Strickland*, the Supreme Court propounded a two-prong test for analysis of ineffective assistance of counsel claims requiring Petitioner to demonstrate that: (1) the counsel's "representation fell below an objective standard of reasonableness[;]" and (2) the counsel's deficient performance prejudices Petitioner such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).  Courts considering an ineffective assistance of counsel claim must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  It is Petitioner's burden to show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* at 687.  Additionally, to establish prejudice under *Strickland*, it is not enough for Petitioner to "show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.  Rather, errors must be "so serious as to deprive [Petitioner] of a fair trial, a trial whose result is reliable." *Id.* at 687.

Where a state court previously adjudicated the ineffective assistance of counsel claim under *Strickland*, establishing the court's decision was unreasonable is especially difficult. *See Richter*, 562 U.S. at 104-05.  In *Richter*, the Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *See id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted).  The Court further clarified, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

### III.  Discussion

#### a.  Ground 1—Insufficient Evidence re: Robbery

In Ground 1, Morales alleges that he was denied his due process rights because there was

insufficient evidence to support the robbery with use of a deadly weapon conviction (Count 16). ECF No. 12 at 13-14.  He alleges that he should not have been convicted of robbery of Ducsak's car keys or vehicle because Ducsak offered the keys to Morales. ECF No. 72 at 4.  At the time of his conviction, Nevada law defined robbery as "the unlawful taking of personal property form the person of another, or in his presence, against his will, by means of force or violence of fear or injury, immediate or future, to his person or property, or the person or property of his family, or of anyone in his company at the time of the robbery." Nev. Rev. Stat. 200.380.

Morales argues that there was no taking.  He never demanded the keys from Ducsak and did not use threat of violence for the purpose of depriving Ducsak of his property. ECF No. 72 at 4-5.  He argues that there was insufficient evidence for the jury to conclude that he robbed Ducsak of his keys. *Id*.

### i.  Additional Background Information

At trial, Ducsak testified that on the night of the incident, two women and four children, including his wife, children, and family friends, were in the home sleeping when Morales broke in. ECF No. 40-4 at 13-14.  He woke up to Morales in his bedroom, pointing a gun at Ducsak, telling Ducsak not to do anything stupid, and "I will kill you." *Id*. at 14.  Ducsak further testified that Morales stated that he messed up, did some bad things, that he was not there to hurt them, but that he would kill them. *Id*.

While Morales was in Ducsak's bedroom, Oyarce went into the bathroom and locked the door. *Id*. at 15.  Morales banged on the bathroom door. *Id*.  Ducsak testified that he thought that Morales was beating Oyarce, and when Ducsak turned the corner towards the bathroom, Morales stopped Ducsak, and pointed his gun at Ducsak. *Id*.  Prompted by Morales, Ducsak had Oyarce exit the bathroom. *Id*.

On direct examination: Ducsak further testified as follows:

Q: After the bathroom incident, what do you do and what do you see and how do you interact with the defendant at that point?

A: I am basically telling him just leave, leave us alone, what do you want? He's repeating that he's done some bad things, he needs to get out of here. At this point in time I'm telling him that I have four cars out front. You can have any one of them. There's keys. Just leave us alone. Just go. If you got to go, you can have

anything you want.

*Id*. at 16.  On cross-examination, defense counsel stated that, "[Morales] didn't ask you for the cars or the keys or anything," and Ducsak confirmed, "No, I was just trying to find a way to get him out." *Id*. at 29-30.

### ii.  State Court Determination

On direct appeal, the Nevada Supreme Court held:

> Morales was charged with robbing Ducsak of "keys and/or a vehicle." He contends that because Ducsak offered him the keys, there was no taking of property and thus no robbery. We disagree and conclude that a rational juror could have reasonably found the essential elements of this crime beyond a reasonable doubt. *See Origel-Candido v. State*, 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); NRS 200. 380. Though Ducsak offered the truck to Morales, that offer resulted from the terror Morales visited upon him and his family and the jury could therefore reasonably find that a taking was accomplished without Ducsak's consent. *See Flynn v. State*, 93 Nev. 247, 249, 526 P.2d 1135, 1136 (1977); *Hayden v. State*, 91 Nev. 474, 476, 538 P.2d 583, 584 (1975).

ECF No. 42-16 at 3.

### iii.  Conclusion

The Nevada Supreme Court's rejection of Morales's claim was neither contrary to nor an objectively unreasonable application of clearly established law as determined by the United States Supreme Court.  When a habeas petitioner challenges the sufficiency of evidence to support his conviction, the court reviews the record to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Jones v. Wood*, 207 F.3d 557, 563 (9th Cir. 2000).

Sufficiency claims are limited to a review of the record evidence submitted at trial. *Herrera v. Collins*, 506 U.S. 390, 402 (1993).  Such claims are judged by the elements defined by state law. *Jackson*, 443 U.S. at 324, n.16).  The reviewing court must respect the exclusive province of the fact-finder to determine the credibility of witnesses, to resolve evidentiary conflicts, and to draw reasonable inferences from proven facts. *United States v. Hubbard*, 96 F.3d 1223, 1226 (9th Cir. 1996).  The district court must assume the trier of fact resolved any evidentiary conflicts in favor of the prosecution, even if the determination does not appear on the

record, and must defer to that resolution.

At trial, the State presented testimony that Ducsak offered his vehicle to Morales in an attempt to have Morales leave without harming Ducsak and his family. Ducsak testified that Morales threatened to kill him and his family, held him at gunpoint, and Morales had stated repeatedly that he had done "bad things." Further, the appellate court relied on *Flynn*, wherein the Nevada Supreme Court found money was taken from the victim against her will even though the victim offered the money, because her offer was "the product of appellant's prior acts of violence and threatening conduct." *Flynn v. State*, 93 Nev 247, 249 (1977).

Viewing the evidence in the light most favorable to prosecution, any rational trier of fact would have found the essential elements of robbery with use of a deadly weapon beyond a reasonable doubt. There was sufficient evidence that Morales took Ducsak's keys without his consent. Based on a review of the record of evidence submitted at trial, the Court concludes that a rational jury could have found the essential elements of the crime beyond a reasonable doubt. The Court denies federal habeas relief for Ground 1.

### b. Ground II —Insufficient Evidence re: First-Degree Kidnapping; Ground V(I)—Ineffective Assistance of Trial Counsel re: Failure to Challenge First-Degree Kidnapping Charge in Motion for Judgment of Acquittal; and Ground VI(B)—Ineffective Assistance of Appellate Counsel re: Failure to Challenge First-Degree Kidnapping Charge

In Ground II, Morales alleges that there was insufficient evidence to support the first-degree kidnapping conviction (Count 9), because the movement associated with the charge was merely incidental to the robbery.[1] ECF No. 12 at 15. The crime of first-degree kidnapping requires proof that Morales seized, inveigled, took, carried away, or kidnapped the victim "with the intent to keep the [victim] detained against his will, for the purpose of committing robbery." *Id*. Morales argues that he was convicted of robbery for the same act as the movement associated with the kidnapping charge was merely incidental to the robbery itself. *Id*. He further argues that he lacked the intent to rob Ducsak and is therefore not guilty of first-degree

---

[1] Morales conceded in his response to Respondents' motion to dismiss that Ground II was procedurally defaulted as untimely and successive. ECF No. 59 at 10. The Court deferred consideration as to whether Morales can overcome the procedural default of Ground II because it is intertwined with the merits of Morales's exhausted claim in Ground V(I).

kidnapping. *Id.*

In Ground V(I), Morales alleges that trial counsel rendered ineffective assistance of counsel for failure to challenge Count 9 in the motion for judgment of acquittal. ECF No. 12 at 39.  In Ground VI(B), Morales alleges that his appellate counsel rendered ineffective assistance for failure to appeal Morales's conviction for the first-degree kidnapping of Ducsak for insufficient evidence because any movement was incidental to the robbery.

### i. Additional Background Information

Ducsak testified at trial as follows:

Q: And what happened after you described and told him where the keys were?

A: He goes let's go get the keys. He follows me. He's behind me with the gun on me, followed me into the kitchen. I reach up and grab a set of keys, and it happened to be the keys for the white expedition that was out front.

Q: And what did you do after you got the keys?

A: I gave him the keys. We walked to the door. And I told him, I said it's the white Expedition out front. And he grabbed the keys and proceeded to the door.

Q: And what happened when he got to the door?

A: As he got to the door, he stops just before he gets – starts opening the door. He stops, turns back around, and I'm standing about 10 feet from him just telling him just go. He turns back around and says, no, I'm not going. As soon as I leave here, you're going to call the cops.

Q: And what did you say in response to that?

A: I just basically told him, I said you're wasting time here talking to me. You got to go. If they're chasing you as you're saying they're chasing you and you're in trouble, you're wasting time. Just go. Just leave us alone.

Q: Did he agree to that, plan number one?

A: No. He says I'm not going anywhere. At that point in time after I told him just go, he wasn't leaving. I offered, I said, well, take me with you. If you're worried about calling the cops, take me with you. Leave the girls – the women and the kids alone. I'll go with you.

. . .

Q: Okay. And what was the defendant's response, if any, to your suggestion about going with him?

A: He said, yes, I'll take – you go with me.

ECF No. 40-4 at 16.

Ducsak further testified that Morales followed him into Ducsak's room at gunpoint to allow Ducsak to put on clothes and shoes. *Id.* Morales continued to point the gun at Ducsak as they walked out of the front door. *Id.* After seeing the police at the end of the street, Morales returned to the house and refused to leave. *Id.*

### ii. State Court Determination

In his second round of state post-conviction proceedings, the Nevada Supreme Court held:

> [Morales] claimed that appellate counsel was ineffective for failing to challenge on appeal his conviction for the first-degree kidnapping of E. Ducsak for the purpose of robbing him where any alleged movement was incidental to the robbery. [Morales] failed to demonstrate deficiency or prejudice. There was sufficient evidence for a jury to conclude that the victim was moved for the purpose of robbing him of his vehicle. And because [Morales] was not convicted of attempted robbery or robbery of the vehicle, there was no improper dual conviction. We therefore conclude that the district court did not err in denying this claim without an evidentiary hearing. [FN 5]
>
>> [FN 5] For the same reasons, [Morales] also failed to demonstrate that trial counsel was deficient in failing to raise the argument in the motion for judgment of acquittal or that appellant was prejudiced by the omission.

ECF No. 45-3 at 11-12, fn 5.

### iii. Conclusion

#### 1. Grounds V(I) and VI(B) are denied.

The Nevada Supreme Court's rejection of Morales's claims was neither contrary to nor an objectively unreasonable application of clearly established law as determined by the United States Supreme Court. Morales failed to demonstrate a reasonable probability that trial counsel would have been successful challenging the kidnapping conviction in a motion for judgment of acquittal or that appellate counsel would have been successful on appeal. As stated by the Nevada appellate court, there was sufficient evidence for a jury to conclude that the victim was moved for the purpose of robbing him of his vehicle. Ducsak testified that Morales held Ducsak at gunpoint after Ducsak retrieved the car keys in the kitchen to the front door, continued to hold him at gun point while Ducsak put on clothes in a bedroom, and held Ducsak at gunpoint from the bedroom and out of the front door. ECF No. 40-4 at 16. Ducsak testified the Morales had the gun displayed at him during the entire ordeal. *Id.*

The Nevada Supreme Court noted that Morales was not convicted of robbery of the vehicle and that there was no dual conviction, even though Morales was in fact convicted of robbery of the vehicle.  Even on *de novo* review, however, the Court denies relief as to Grounds V(I) and VI(B).  A rational trier of fact, after viewing the evidence in the light most favorable to the prosecution, could find that the kidnapping was not merely incidental to the robbery under the standards outlined in Nevada law.  The Nevada Supreme Court clarified the circumstances that generally expose a defendant to dual convictions for robbery and kidnapping in *Mendoza v. State*, 122 Nev. 267, 130 P.3d 176, 180 (Nev. 2006), explaining that dual convictions are appropriate if the movement or restraint substantially increases the victim's risk of harm or substantially exceeds the restraint necessary to complete the associated crime:

> …movement or restraint incidental to an underlying offense where restraint or movement is inherent, as a general matter, will not expose the defendant to dual criminal liability under either the first-or second-degree kidnapping statutes. However, where the movement or restraint serves to substantially increase the risk of harm to the victim over and above that necessarily present in an associated offense, i.e. robbery…or where the seizure, restraint, or movement of the victim substantially exceeds that required to complete the associated crime charged, dual convictions under the kidnapping and robbery statutes are proper. Also, … dual culpability is permitted where the movement, seizure or restraint stands alone with independent significance from the underlying charge.

122 Nev. at 274-75, 130 P.3d at 180-81.

Nevada cases applying the *Mendoza* line drawn by the state supreme court have upheld jury verdicts in contexts involving increased risk of harm to the victim from guarding the victim as gunpoint and/or from movement or restraint that otherwise substantially exceeded the movement or restraint necessary to complete the robbery.[2]  Here, Morales followed Ducsak at

---

[2] *See, e.g., Guerrina v. State*, 419 P.3d 705, 708-11 (Nev. 2018) (the defendant, *inter alia*, accosted the victim outside a store and forced her to accompany him into the more secluded store, where he demanded her wallet and cell phone); *Stewart v. State*, 393 P.3d 685, 686-88 (Nev. 2017) (the defendant and his accomplice accosted the victim as she was entering her apartment, held her at gunpoint, forced her at gunpoint to allow them into the apartment, and made her lie face down on the floor in the back bedroom and guarded her at gunpoint while they ransacked her apartment); *Gonzales v. State*, 354 P.3d 654, 656-67 (Nev. App. 2015) (the accomplices forced the victim at gunpoint from an open garage visible to her neighbors into the house and thereafter moved her from room to room despite her not knowing where her husband had stored his weapons, when the robbery instead could have been accomplished simply by detaining her in the garage while they searched the house).

gunpoint into the kitchen, to the front door, to a bedroom to allow Ducsak to put on clothes and shoes to leave the house, back to the front door, and out of the front door into Ducsak's front patio.  The movement was not necessary for the robbery itself.  Morales could have displayed his weapon, directed Ducsak to give him the keys to the vehicle, and left the residence. A rational trier of fact could conclude in particular that the kidnapping created an increased risk of harm to the victims resulting from guarding the victim at gunpoint and movement that otherwise substantially exceeded the movement or restraint necessary to complete the robbery.

There was sufficient evidence for a jury to find Morales guilty of kidnapping under the *Mendoza* analysis.  Accordingly, the state supreme court did not objectively unreasonably apply *Smith v. Robbins*, 528 U.S. 259, 285 (2000),[3] *Strickland, Jackson,* or other clearly established federal law as determined by the Untied State Supreme Court when it rejected Morales's claims. Accordingly, even on *de novo* review, the Court reaches the same result and denies habeas relief as to Grounds V(I) and VI(B).

### 2.  Ground II is dismissed.

Based on the foregoing, the Court finds that Morales fails to demonstrate good cause and prejudice to overcome the procedural default of Ground II.  The Court dismisses Ground II.

### c.  Ground III—Disproportionate Sentence

In Ground III, Morales alleges that his sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment because it is disproportionate. ECF No. 12 at 17.  He asserts that he engaged in one course of criminal conduct resulting from a serious drug addiction disorder and did not have a criminal history. *Id*. at 19.  The State originally charged Morales with 21 felony counts and Morales was convicted of eight counts. ECF No. 72 at 10. Morales asserts that his sentence of 27 years to life exceeds the punishment for first degree murder. *Id*.

///

---

[3] To prevail on his ineffective assistance of appellate counsel claim, Morales must show his appellate counsel acted deficiently and "a reasonable probability that, but for his [appellate] counsel's" deficiency, Morales "would have prevailed on his appeal." *Robbins*, 528 U.S. at 285.

### i. State Court Determination

On direct appeal, the Nevada Supreme Court held:

> Morales claims his sentence is grossly disproportionate to the crimes he committed and therefore constitutes cruel and unusual punishment. Morales held four people at gunpoint while stealing drugs from a Walgreens, then committed the above-described home invasion. The sentence imposed is not disproportionate to the crimes, and Morales therefore fails to establish that the district court abused its discretion. *See Etcheverry v. State*, 107 Nev. 782, 786, 821 P.2d 350, 351 (1991).

ECF No. 42-16 at 3.

### ii. Conclusion

The Eighth Amendment does not require strict proportionality between crime and sentence, but instead forbids sentences that are "grossly disproportionate" to the crime. *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring). Successful challenges to the proportionality of particular non-capital sentences "have been exceedingly rare." *Ewing v. California*, 528 U.S. 11, 21 (2003). A sentence within statutory limits generally will not be overturned on Eighth Amendment grounds. *U.S. v. Parker*, 241 F.3d 1114, 1119 (9th Cir. 2001).

Here, Morales does not argue that his sentence falls outside the parameters of the relevant state laws. The state district court convicted Morales of two counts of burglary with use of a deadly weapon, two counts of robbery with use of a deadly weapon, one count of first-degree and second-degree kidnapping with use of a deadly weapon and failing to stop on signal of a police officer. At sentencing, the State considered the "severity of each of the offenses," and "the amount of terror" and "damage and violence," that the victims experienced. ECF No. 41-19 at 6. The defense argued for minimum terms for each of his sentences to run concurrently and highlighted Morales's drug addiction as the motive for his offenses. *Id*. at 6-7. The state district court considered Morales's lack of criminal history in mitigation, but also commented that the court had "to recognize the absolute continuous trial of terror that you imposed upon almost a dozen people, not to mention all of those who may have been in the – what I'll call the zone of danger as you drove between the various locations of the crimes." *Id*. at 8.

The Nevada Supreme Court's rejection of Morales's claim was neither contrary to nor an objectively unreasonable application of clearly established law as determined by the United

States Supreme Court.  The sentences of 27 years to life were not "grossly disproportionate" to Morales's crimes, given the gravity of the offenses and the harm caused to his victims by his conduct.  Morales is therefore denied federal habeas relief as to Ground III.

### d.   Ground V(A)—Ineffective Assistance of Trial Counsel re: Failure to Rebut Sentencing Memorandum

In Ground V(A), Morales alleges that his trial counsel rendered ineffective assistance of counsel for failure to rebut the State's sentencing memorandum or otherwise adequately advocate for Morales in sentencing. ECF No. 12 at 23.  He asserts that trial counsel failed to investigate mitigating evidence. ECF No. 72 at 11.  He further asserts that counsel's failure to rebut the allegations in the State's sentencing memorandum, including alleged details of uncharged criminal conduct, lacked strategic value. *Id*. at 12.  In the alternative, Morales requests an evidentiary hearing. *Id*.

### i.   State Court Determination

The Nevada Supreme Court held:

> [Morales] claimed counsel was ineffective for failing to call a psychiatrist or addiction expert at trial or sentencing, to prepare a sentencing memorandum, or to investigate allegations made at sentencing of other uncharged crimes. [Morales] failed to demonstrate deficiency or prejudice. His bare claims failed to state what the desired expert would have said, how appellant's addiction affected his intent in such a way as to have had any impact on the outcome at either trial or sentencing, what rebuttal information could have been procured, what the results of an investigation would have been, or how any of it would have affected the outcome at sentencing. We therefore conclude that the district court did not err in denying these claims without an evidentiary hearing.

ECF No. 45-3 at 6.

### ii.   Conclusion

The Nevada appellate court's rejection of Morales's ineffective assistance claim was neither contrary to nor an objectively unreasonable application of *Strickland*.  The Nevada Supreme Court reasonably determined that Petitioner failed to demonstrate prejudice.  At sentencing, the State referred to phone calls that Morales made to his mother after his arrest. ECF No. 41-9 at 5.  In those phone calls, Morales discussed a fully automatic rifle that he modified as well as attaching a grenade launcher to his vehicle. *Id*.  The state also noted that Morales was

wearing a bulletproof vest and bail enforcement badge when committing the offenses of which he was convicted. *Id.* The State further highlighted the effect of "the damage and the violence" Morales inflicted during the home invasion. *Id.* at 6.

At sentencing, defense counsel highlighted that Morales had no prior record of criminal activity. *Id.* at 7. Counsel further referenced the multiple character letters submitted on Morales's behalf discussing his integrity and that he was a productive member of society. *Id.* Counsel highlighted Morales's drug addiction and that he was under the influence at the time of the events. *Id.* Accordingly, it was not unreasonable for the Nevada appellate court to conclude that Morales failed to demonstrate a reasonable likelihood that the results of the penalty phase would have been different had counsel provided further rebuttal of the State's sentencing memorandum. The Court therefore denies federal habeas relief as to Ground V(A).

The Court denies Morales's request for an evidentiary hearing on this ground. This claim was ruled on the merits by the state court and this Court determines that Morales does not show the state court ruling to be unreasonable under 28 U.S.C. § 2254(d). Therefore, further evidentiary development is unwarranted.

### e.  Ground V(B)—Ineffective Assistance of Trial Counsel re: Failure to Pursue Plea Negotiations

In Ground V(B), Morales alleges that trial counsel rendered ineffective assistance for failure to pursue plea negotiations with the State. ECF No. 12 at 24. Although the State confirmed that a formal offer was never extended to Morales, prosecution testified at the evidentiary hearing on remand, that he "was never approached by counsel at any time prior to trial, during trial [with a proposal to resolve the case]." *Id.* at 25. Morales asserts that there is a reasonable probability that had trial counsel negotiated, the State would have recommended a sentence of less than 25 years, which is the recommended minimum sentencing that the State argued at trial. ECF No. 72 at 16.

### i.  Additional Background Facts

At the evidentiary hearing on remand, the prosecution testified as follows:

Q: Do you recall ever extending an offer to [counsel] in this case?

14

A: I do not recall ever extending an offer to either [counsel] or any other counsel and when I refer to your client's jury trial in this department.

Q: And do you recall if you were ever willing to negotiate this case?

A: I certainly would have entertained some discussions but based upon the seriousness of this offense, the number of charge, the number of victims, and how violent it was the window of options was pretty narrow.

ECF No. 45-12 at 4.

### ii. State Court Determination

The Nevada Supreme Court found that the state district court erred in denying this claim without an evidentiary hearing. ECF No. 45-3 at 3-4. On remand, following an evidentiary hearing, the state district court denied Morales's ineffective assistance of counsel claim. ECF No. 45-18. On appeal, the Nevada Supreme Court held:

> Morales contends that trial counsel should have tried to negotiate the case. Morales failed to demonstrate that counsel was ineffective because he failed to identify a plea agreement that counsel should have negotiated and that the district court would have accepted. *See generally Missouri v. Frye*, 566 U.S. 134, 146 (2012) (recognizing that counsel is deficient for failing to communicate a plea offer); *see Lafler v. Cooper*, 566 U.S. 156, 168 (2012) (recognizing that a defendant has the right to effective assistance of counsel in considering whether to accept a plea).

ECF No. 46-5 at 2-3.

### iii. Conclusion

Morales has not sufficiently demonstrated that trial counsel's "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 694. An attorney's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id*. at 691. *See Dunn v. Reeves*, 141 S. Ct. 2405, 2410 (2021) ("[E]ven if there is reason to think that counsel's conduct 'was far from exemplary,' a court still may not grant relief if '[t]he record does not reveal' that counsel took an approach that no competent lawyer would have chosen.") The decision whether to pursue a plea bargain is a tactical decision within the purview of counsel's discretion. The Court therefore finds that the state appellate court reasonably determined that Morales failed to show that his trial counsel was deficient.

The Court, nonetheless, in the alternative, would deny relief on *de novo* review. The

Court finds that Morales fails to show that he was prejudiced by counsel's failure to initiate plea discussions. Nothing in the record shows a reasonable probability that the prosecutor would have agreed to a plea deal.  Although the prosecution testified willingness to entertain discussions, he also testified that "the window of options was pretty narrow" based on the seriousness of the offenses, the number of victims, the violence, and the number of charges. ECF No. 45-12 at 4. In addition, nothing in the record shows that the state district court would have accepted a plea deal in which Morales received a substantially reduced sentence.  Accordingly, even on *de novo* review, the Court reaches the same result and denies habeas relief as to Ground V(B).

### f.   Ground V(C)—Ineffective Assistance of Trial Counsel re: Failure to Challenge Count 3 Conviction in Motion for Judgment of Acquittal

In Ground V(C), Morales alleges that trial counsel rendered ineffective assistance for failure to challenge Count 3, the false imprisonment charge, in his motion for acquittal. ECF No. 12 at 28.  The Nevada Supreme Court ruled that appellate counsel rendered ineffective assistance because Count 3 was not supported by the record and vacated the conviction and sentence of Count 3. *Id*.  Morales asserts that the Nevada Supreme Court's remedy was inadequate because the additional conviction materially affected the sentencing court's calculus by including an additional crime with an increased range of sentencing options for the court. ECF No. 72 at 18.

Moreover, Morales argues that the Court should order a new sentencing hearing. The state court sentenced Morales to one to four years for this count and ran it concurrently to Counts 1 and 2. ECF No. 12 at 29.  Morales asserts that the state court "was imposing a more generous sentence," and would have directed that leniency to another aspect of the sentence, but for trial counsel's failure to challenge Count 3. *Id*.  He further asserts that the Nevada Supreme Court's decision to vacate Count 3 was an inadequate remedy. *Id*. at 28.

### i.   State Court Determination

In his state post-conviction petition, Morales alleged ineffective assistance of trial and appellate counsel claims based on trial and appellate counsel's failure to challenge Morales's false imprisonment charge of the Walgreen's pharmacist as incidental to robbery. ECF No. 42-32 at 23-34. The Nevada Supreme Court addressed the ineffective assistance of appellate counsel

16

1    claim as follows:

2          Morales contends that appellate counsel should have argued that his conviction for
           falsely imprisoning the pharmacist was incidental to his conviction for robbing the
3          pharmacist. We agree. A defendant may be convicted of robbery and false
           imprisonment only if the restraint necessary for false imprisonment "stand[s] alone
4          with independent significance form the act of robbery itself, create[s] a risk of
           danger to the victim substantially exceeding that necessarily present in the crime of
5          robbery, or involve[s] … restraint substantially in excess of that necessary to its
           completion." *Mendoza v. State*, 122 Nev. 267, 275, 130 P.3d 176, 181 (2006); *see*
6          *Garcia v. State*, 121 Nev. 327, 334-35, 113 P.3d 836, 840-41 (2005) (applying the
           incidental analysis to convictions for false imprisonment and robbery), *modified on*
7          *other grounds by Mendoza*, 122 Nev. at 274, 130 P.3d at 180. Here, Morales merely
           held the pharmacist at gunpoint and ordered her to give him drugs from behind the
8          counter. This restraint was incidental to the robbery and this claim would have
           succeeded on appeal. *See Wright v. State*, 94 Nev. 415, 416, 581 P.2d 442, 443
9          (1978), *modified on other grounds by Mendoza*, 122 Nev. 274. And although an
           appellate attorney is not required to raise every nonfrivolous claim, *see Johnson v.*
10         *State*, 133 Nev., Adv. Op. 73, 402 P.3d 1266, 1274 (2017), we conclude that
           counsel's failure to raise this claim was objectively unreasonable under the
11         circumstances. We therefore order the district court to vacate Morales' conviction
           for false imprisonment.

12

13   ECF No. 46-5 at 3-4.

14                            **ii.   Conclusion**

15          This Court's habeas corpus jurisdiction depends on Morales being "in custody" as a

16   result of the conviction and sentence he seeks to challenge. *See* U.S.C. § 2254(a); *Maleng v.*

17   *Cook*, 490 U.S. 488 (1989). Custody is tested at the time of filing the petition; that is, a person

18   must be in custody, under the conviction or sentence attached, at the time he files the petition.

19   *See Maleng*, 490 U.S. at 490-92. There must be a nexus between "the judgment of a State court"

20   the petitioner is challenging and the "custody" upon which the petitioner relies to establish

21   jurisdiction. *Dominguez v. Kernan*, 906 F.3d 1127, 1136 (9th Cir. 2018). Put differently, the

22   source of the challenged judgment must be "the source of the petitioner's custody." *Id*.

23          Here, Morales is being held in custody pursuant to the state court's second amended

24   judgment of conviction for Counts 1, 2, 7, 8, 9, 10, 11, and 16 entered on July 19, 2018. ECF No.

25   46-10. The amended judgment of conviction reflects the conviction on Count 3 is vacated. *Id*. at

26   7. Because the state court ran the sentence for Count 3 concurrently to Counts 1 and 2, Count 3

27   did not authorize Morales's detention, and its dismissal neither changed the length nor the nature

28   of the confinement Nevada imposed on him. Morales filed his amended petition for writ of

habeas corpus on February 4, 2019, after the state court entered the second amended judgment of conviction.[4]  The Court therefore dismisses Ground V(C) for lack of jurisdiction.

### g.   Ground V(D)—Ineffective Assistance of Trial Counsel re: Failure to Challenge Juror

In Ground V(D), Morales alleges trial counsel rendered ineffective assistance of counsel for failure to challenge for cause or exercise a peremptory challenge for a juror that was unfit to serve. ECF No. 12 at 31.  He asserts that because a juror, Dixon, indicated on the record that he "couldn't say" whether the involvement of children would "affect [his] ability to be fair," trial counsel should have moved to dismiss Dixon as a partial juror. *Id*.  Morales alleges that but for trial counsel's failure to challenge Dixon as a juror, he would have received a fair trial and would have been acquitted of one or more charges. *Id*. at 31-32.

### i.   Additional Background Information

During voir dire, trial counsel posed the following questions to prospective jurors:

**COUNSEL:** So you can't say – can you say for sure that you would be unable to be fair and impartial based on the fact that there were children involved?

**JUROR:** It depends on the circumstances. That's all I can say.

**COUNSEL:** I appreciate that. Fair enough. Thank you. Does anybody else – yes.

**JUROR:** I would – I would think that if something was committed, you know, and if there was enough witnesses, enough proof to leave the children out, then I would think that they would be left out because I don't think as children they need to be in that situation, unless it's absolutely necessary to prove something. But if there's enough other evidence, then I feel the kids shouldn't be here. Just wouldn't be a place for them.

**COUNSEL:** Okay. Anybody else?

**JUROR:** Here. I've got a 2 year old, and I feel the same way as they were talking a little while ago. I would feel the same way. If the child is present, it would automatically make me think that, you know, I'll go on the case against that.

**COUNSEL:** Okay. So would you – I mean I guess the ultimate question is do you think that would affect your ability to be fair and impartial?

**JUROR:** Yes. Yes, it would.

---

[4] Morales filed his original petition for writ of habeas corpus on March 20, 2018, but did not assert a claim for ineffective assistance of trial counsel for failure to challenge Count 3 in a motion for judgment of acquittal. ECF No. 1.

**COUNSEL:** If you hear that children are involved, that pretty much is going to set off something in your head that says I just can't be fair?

**JUROR:** Exactly, because I've got kids at my house.

**COUNSEL:** Okay. Anybody else feel the same – same way? Anybody else have a different opinion on that? Yes, sir.

**JUROR:** I think children should be the last resort because it's unfortunate that they have to speak the truth. And there might be some harsh words come out that you don't want to say around kids that you have to say in court.

**COUNSEL:** And you're Mr. Dixon?

**JUROR**: Yes, sir.

**COUNSEL:** Now, do you think that if there's, as the question's been posed, if there's children involved, that that's going to affect your ability to be fair?

**JUROR:** I couldn't say. I'm just thinking from the kids because you raise your kids up that they're not supposed to say cuss words, you know, and then they come to court, and that edification, that's going to come out, you know, the way my mom said it, now I've got to say it in court.

ECF No. 40-2 at 29.

### ii.   State Court Determination

On appeal, the Nevada Supreme Court held:

[Morales] claimed counsel was ineffective for failing to seek clarification from or to dismiss a juror who could not say whether he could be fair. [Morales] failed to demonstrate deficiency or prejudice. The juror at issue volunteered that he was unsure whether he could be fair if children were forced to testify, but the State has already indicated that no children would be testifying, and none were called at trial. To the extent [Morales] claimed that trial counsel was ineffective in posing the venire questions regarding child victims, it was not objective unreasonable where [Morales] was charged with four counts of first-degree kidnapping of children. We therefore conclude that the district court did not err in denying this claim without an evidentiary hearing.

ECF No. 45-3 at 5-6.

### iii.   Conclusion

The Nevada appellate court's rejection of Morales's ineffective assistance claim was neither contrary to nor an objectively unreasonable application of *Strickland*. Morales's contention that Dixon responded affirmatively that he could not be fair or impartial is belied by the record. Dixon indicated that he "couldn't say" if the involvement of children would affect his ability to be fair, and Dixon further explained his primary concern was children testifying at

trial. ECF No. 45-3 at 6.  The Nevada Supreme Court's ruling was not objectively unreasonable in determining that Morales failed to demonstrate deficiency or resulting prejudice. Accordingly, the Court denies federal habeas relief for Ground V(D).

### h.   Ground V(E)—Ineffective Assistance of Trial Counsel re: Failure to Investigate Drug Addiction and Psychological Issues

In Ground V(E), Morales alleges that trial counsel rendered ineffective assistance for failure to obtain a psychiatrist or addiction specialist to testify at trial. ECF No. 12 at 32.  He further asserts that he would have received a more favorable sentence if trial counsel presented information regarding his drug disorder and psychological challenges. *Id*.  He asserts that an expert could have informed the state court of the underlying causes of his conduct and his potential for rehabilitation with proper treatment. ECF No. 72 at 23.

### i.   State Court Determination

As provided in Ground V(A), the Nevada Supreme Court denied relief finding that trial counsel was not ineffective for failing to call a psychiatrist or addiction expert at trial or sentencing because Morales failed to demonstrate deficiency or prejudice. ECF No. 45-3 at 6. The Nevada appellate court provided as follows:

> His bare claims failed to state what the desired expert would have said, how appellant's addiction affected his intent in such a way as to have had any impact on the outcome at either trial or sentencing, what rebuttal information could have been procured, what the results of an investigation would have been, or how any of it would have affected the outcome at sentencing.

ECF No. 45-3 at 6.

### ii.   Conclusion

The Nevada appellate court's rejection of Morales's ineffective assistance claim was neither contrary to nor an objectively unreasonable application of *Strickland*.  There is no showing that presenting additional evidence regarding Morales's drug addiction would have raised a reasonable probability of a better outcome.  Accordingly, the Court denies federal habeas relief for Ground V(E).

### i. Ground V(F)—Ineffective Assistance of Trial Counsel re: Failure to Object to Jury Instruction No. 17

In Ground V(F), Morales alleges that trial counsel rendered ineffective assistance for failure to object to Jury Instruction No. 17 as misleading the jury as to the State's burden of proof for first- and second-degree kidnapping and false imprisonment. ECF No. 12 at 34. Jury Instruction No. 17 provided in relevant part:

> The crime of first-degree kidnapping may include the crime of second-degree kidnapping or false imprisonment. You shall find the defendant guilty of second-degree kidnapping if:
>
> > (1) Some of you are not convinced beyond a reasonable doubt that the defendant is guilty of first-degree kidnapping, and
> > (2) All twelve of you are convinced beyond a reasonable doubt the defendant is guilty of the crime of second-degree kidnapping.

ECF No. 41-3 at 22. Morales alleges that the jury instruction shifted the burden to Morales and lead the jury to believe that, in order to convict Morales of second-degree kidnapping, at least one juror must believe that he is guilty of first-degree kidnapping. ECF No. 72 at 24.

### i. State Court Determination

The Nevada Supreme Court held:

> [Morales] claimed counsel was ineffective for failing to challenge instruction 17 as shifting the burden of proof to [Morales] and misleading the jury to believe that to convict him of second-degree kidnapping, at least one juror must believe that he is guilty of first-degree kidnapping. [Morales] failed to demonstrate deficiency or prejudice. The instruction did not shift the burden of proof. We therefore conclude that the district court did not err in denying this claim without an evidentiary hearing.

ECF No. 45-3 at 6.

### ii. Conclusion

The Nevada appellate court's rejection of Morales's ineffective assistance claim was neither contrary to nor an objectively unreasonable application of *Strickland*. Morales fails to overcome the strong presumption that his counsel's conduct "falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. 689. Looking at the jury instructions as a whole, the jury was adequately instructed as to the burden of proof and there is not a reasonable likelihood that the jury was confused. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991). Morales has not demonstrated beyond speculation that an objection had any reasonable

probability of a better outcome.  Accordingly, the Court denies habeas relief with respect to Ground V(F).

### j.   Ground V(G)—Ineffective Assistance of Trial Counsel re: Failure to Object to Jury Instruction No. 12

In Ground V(G), Morales alleges that trial counsel rendered ineffective assistance for failure to object to Jury Instruction No. 12 as likely to mislead and confuse the jury. ECF No. 12 at 36.  Jury Instruction No. 12 provides in relevant part:

> Personal property is "in the presence" of a person, in respect to Robbery, when it is within the person's reach, inspection, observation or control, and the person could (if not prevented by intimidation or threat of violence) retain possession of the property.

ECF No. 41-3 at 17.  Morales asserts that although N.R.S. § 200.380(1) provides that "the degree of force used is immaterial" in robbery, Nevada law contradicts whether the State needs to prove the degree of force used for robbery. ECF No. 72 at 26.  The Nevada Supreme Court held in *Robertson v. Sheriff, Clark County*, 565 P.2d 647, 648 (Nev. 1977), that a "thing is in the presence of a person, in respect to robbery, which is so within his reach, inspection, observation or control, that he could, if not *overcome* by violence or prevented by fear, retain his possession of it" (emphasis added).

#### i.   State Court determination

The Nevada Supreme Court held:
> [Morales] claimed counsel was ineffective for failing to challenge jury instruction 12, defining "in the presence" of a person for purposes of robbery, as a misstatement of law. [Morales] failed to demonstrate deficiency or prejudice. [Morales] complained that the instruction's verbiage, "if not prevented by intimidation or threat of violence," required the use of less force than this court has required, that is "if not overcome by violence or prevented by fear." *Robertson v. Sheriff*, 93 Nev. 300, 302 (1977) (quoting *Commonwealth v. Homer*, 127 N.E. 517, 520 (Mass 1920)). [Morales's] attempt to parse verbiage was without merit because "[t]he degree of force used is immaterial" in robbery. NRS 200.380(1). We therefore conclude that the district court did not err in denying this claim without an evidentiary hearing.

ECF No. 45-3 at 7.

#### ii.   Conclusion

The Nevada appellate court's rejection of Morales's ineffective assistance claim was

neither contrary to nor an objectively unreasonable application of *Strickland*. Petitioner fails to demonstrate that trial counsel was deficient or that there was a reasonable probability of a different outcome if counsel had objected to the jury instruction. The Nevada appellate court did not find a misstatement of Nevada law. The Court does not find ineffective assistance of counsel by failure to raise a meritless objection. Accordingly, the Court denies habeas relief with respect to Ground V(G).

### k.   Ground V(H)—Ineffective Assistance of Trial Counsel re: Failure to Request a Lesser-Included Jury Instruction of Petit Larceny

In Ground V(H), Morales alleges that trial counsel rendered ineffective assistance for failure to request a lesser-included jury instruction for petit larceny for robbery of Ducsak (Count 16). ECF No. 12 at 38. He asserts that trial counsel deprived him of the chance of avoiding a conviction of robbery. *Id*. He further asserts that because Ducsak affirmatively offered his car keys to Morales, a jury could have found him guilty of a lesser-included charge. *Id*.

### i.   State Court Determination

The Nevada Supreme Court held:

[Morales] claimed counsel was ineffective for failing to request a jury instruction on petit larceny as a lesser-included offense to the robbery of E. Ducsak. [Morales] failed to demonstrate deficiency or prejudice. [Morales] did not demonstrate that counsel was objectively unreasonable in failing to request a jury instruction for petit larceny, *see* NRS 205.240(1)(a)(1) (defining it in relevant part as the intentional taking and carrying away of personal property of another), where doing so would have been contrary to the defense theory at trial that there was no "taking" of personal property. *See Doleman v. State*, 112 Nev. 843, 848 (1996) (holding that tactical decisions are "virtually unchallengeable absent extraordinary circumstances"). Moreover, the jury found [Morales] guilty beyond a reasonable doubt of the greater offense of robbery, which this court affirmed on direct appeal, *see Morales v. State*, Docket No. 54216 (Order of Affirmance, July 15, 2010), such that there was no reasonable probability of a different outcome had counsel requested the instruction. *See Rosas v. State*, 122 Nev. 1258, 1265, 147 P.3d 1101, 1106 (2006) (stating that an instruction on a lesser-included offense is not an invitation to the jury to return a compromise verdict). We therefore conclude that the district court did not err in denying this claim without an evidentiary hearing.

ECF No. 45-3 at 7-8.

### ii.   Conclusion

The Nevada appellate court's rejection of Morales's ineffective assistance claim was neither contrary to nor an objectively unreasonable application of *Strickland*. Trial counsel was

not deficient because the inclusion of the jury instruction for petit larceny would have been contrary to the theory of defense used at trial that Morales did not commit a taking.  In addition, Morales cannot demonstrate a reasonable probability that, had trial counsel requested a jury instruction as to petit larceny, the result of the proceeding would have been different.  Evidence presented at trial demonstrated that Morales took Ducsak's keys without his consent, that Morales threatened to kill Ducsak, and that Ducsak feared for his safety and the safety of his family.  In light of the evidence against Morales, Morales has not demonstrated that the inclusion of the jury instruction for petit larceny had any likelihood of success.  Accordingly, the Court denies habeas relief with respect to Ground V(H).

### l.   Ground V(J)—Ineffective Assistance of Trial Counsel re: Failure to Challenge Robbery in Motion for Judgment of Acquittal

In Ground V(J), Morales alleges that trial counsel rendered ineffective assistance for failure to challenge the robbery of Ducsak (Count 16) conviction in the motion for judgment of acquittal. ECF No. 12 at 40.  He asserts that he is not guilty of robbery because Ducsak independently offered the idea to turn over his keys to Morales. *Id*.

When a state court rejects a claim on the merits without articulating a specific rationale, AEDPA's deferential standard of review continues to apply. *Harrington v. Richter*, 562 U.S. 86, 92 & 97-100 (2011) (when state court summarily denies a claim without discussion, federal habeas court presumes that the claim was adjudicated on its merits); *Johnson v. Williams*, 568 U.S. 289 (2013) (*Harrington* presumption applies when the state court's decision denying relief discusses some claims, but is silent with respect to other claims).  In that situation, the federal court must consider the arguments or theories that could have supported the state court's decision; "and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the United States Supreme Court]." *Harrington*, 562 U.S. at 102.

As provided in the discussion as to Ground I, the State presented testimony that Ducsak offered his vehicle to Morales in an attempt to have Morales leave without harming Ducsak and his family.  Morales threatened to kill Ducsak and his family, held him at gunpoint, and Morales

had stated repeatedly that he had done "bad things." Further, the appellate court relied on *Flynn*, wherein the Nevada Supreme Court found the victim's offer was "the product of appellant's prior acts of violence and threatening conduct." *Flynn v. State*, 93 Nev 247, 249 (1977).

As the state appellate court found there was sufficient evidence that Morales took Ducsak's keys without his consent, the state appellate court could have also concluded that Morales failed to demonstrate prejudice because of a lack of a reasonable probability that the result of the proceeding would have been different had counsel challenged the robbery conviction. Accordingly, the Nevada appellate court's rejection of Morales's ineffective assistance claim was neither contrary to nor an objectively unreasonable application of *Strickland*. The Court denies habeas relief with respect to Ground V(J).

### m. Ground V(K)—Ineffective Assistance of Trial Counsel re: Failure to Challenge Prosecution's Factual Misstatements in Grand Jury Proceedings

In Ground V(K), Morales alleges trial counsel rendered ineffective assistance for failure to challenge two factual misstatements made by the prosecution during the grand jury proceedings. ECF No. 12 at 41. While questioning Ducsak, the prosecutor asked "[p]rior to him *shooting you*, did he make any statements or references to you with the gun prior to the shot being fired?" *Id*. Although Morales discharged the gun during a physical altercation between Morales and Ducsak, Ducsak was not shot. ECF No. 72 at 32. The prosecutor also asked, "[n]ow after *the second shot* was fired and the statement about putting one into your head, did there come a time where you ultimately were successful in overpowering him?" *Id*. Morales did not discharge the gun twice.

Morales was later acquitted of two counts of attempted murder. Morales alleges that trial counsel was deficient for failing to move to dismiss these counts for prosecutorial misconduct based on the prosecutor's misstatements. ECF No. 12 at 42. He asserts that the charges affected his exposure at sentencing and negotiation prior to trial. *Id*.

### i. State Court Determination

The Nevada Supreme Court held:

[Morales] claimed counsel was ineffective for failing to move to dismiss the

indictment or, at least, the attempt murder charges because of alleged errors during the grand jury proceedings. [Morales] failed to demonstrate deficiency or prejudice. [Morales] did not demonstrate that the form of the challenged questions … resulted in substantial prejudice, *see Lay v. State*, 110 Nev. 1189, 1198 (1994) (holding that a defendant must show "substantial prejudice" to warrant a dismissal), such that counsel was objectively unreasonable in not challenging the actions. Moreover, any error in the form of the questioning was cured when appellant was acquitted of the attempt murder charges. *Cf. Lisle v. State*, 114 Nev. 221, 224-25 (1998) (noting there would not be prejudice where the defendant was later found guilty beyond a reasonable doubt). We therefore conclude that the district court did not err in denying these claims without an evidentiary hearing.

ECF No. 45-3 at 4.

### ii.   Conclusion

The Nevada appellate court's rejection of Morales's ineffective assistance claim was neither contrary to nor an objectively unreasonable application of *Strickland*.  As noted by the Nevada Supreme Court, Morales did not demonstrate that the prosecutor's questions posed during the grand jury proceedings resulted in substantial prejudice such that counsel would have successfully moved to dismiss the charges based on prosecutorial misconduct.  The Court finds that the Nevada Supreme Court's ruling was not unreasonable and denies habeas relief with respect to Ground V(K).

### n.   Ground V(L)—Ineffective Assistance of Trial Counsel re: Failure to Request Jury Instruction for Coercion

In Ground V(L), Morales alleges trial counsel rendered ineffective assistance of counsel for failure to request lesser-included jury instructions for coercion for the first-degree kidnapping counts (Counts 9, 10, and 11). ECF No. 12 at 44.  He asserts that the jury should have been given the lesser-included option of coercion because there was a substantial risk that the jury convicted Morales of kidnapping despite a failure to prove all the elements in order to hold Morales responsible. *Id*. at 45.  He further asserts that had trial counsel submitted the lesser-included charges to the jury, the jury would have returned a guilty verdict for coercion, and the state court would have imposed a lower sentence. *Id*. at 46.

### i.   State Court Determination

The Nevada Supreme Court held:

Even assuming without deciding that coercion is a lesser-included offense of first-

26

degree kidnapping, [Morales] failed to demonstrate deficiency or prejudice. Counsel elected to argue that [Morales] was guilty of no more than false imprisonment, which would have carried the same penalty as coercion. *Compare* NRS 200.460(3), *with* NRS 207.190(2)(a); *see Doleman*, 112 Nev. at 848, 921 p.2d at 280-81. Moreover, the jury found [Morales] guilty beyond a reasonable doubt of either first- or second-degree kidnapping of the adult victims such that there was no reasonable probability of a different outcome had counsel argued for coercion. *See Rosas*, 122 Nev. at 1265, 147 P.3d at 1106. We therefore conclude that the district court did not err in denying this claim without an evidentiary hearing.

ECF No. 45-3 at 8.

### ii.  Conclusion

The Nevada appellate court's rejection of Morales's ineffective assistance claim was neither contrary to nor an objectively unreasonable application of *Strickland*. A defense counsel's performance is not constitutionally ineffective if he or she, "with adequate knowledge of the law and the evidence," chooses not to request a lesser included offense instruction as long as such choice is reasonable. *Butcher v. Marquez*, 758 F.2d 373, 376-77 (9th Cir. 1985).  As stated by the Nevada Supreme Court, counsel elected to argue that Morales was guilty of no more than false imprisonment, which carried the same penalty as coercion.

However, even if this tactical decision was deficient, Morales was not prejudiced. Because the jury was instructed on false imprisonment, yet convicted Morales of kidnapping, there is no reason to conclude that the verdict would have been different had the jury also been instructed on the offense of coercion. *See Strickland*, 466 U.S. at 695 (explaining that in assessing whether a defendant was prejudiced by ineffective assistance, a court should presume that the decisionmaker "reasonably, conscientiously, and impartially" applied the correct legal standards).  Considering the record as a whole, the Court cannot conclude that there is a reasonable probability that the result of Morale's trial would have been different had counsel included the coercion instruction.  The Court denies habeas relief with respect to Ground V(L).

### o.  Ground V(M)—Ineffective Assistance of Trial Counsel re: Failure to Challenge Burglary Charge in Motion for Judgment of Acquittal

In Ground V(M), Morales alleges trial counsel rendered ineffective assistance for failure to challenge the burglary with use of a deadly weapon charge (Count 8) in the motion for acquittal. ECF No. 12 at 46.  He asserts that Morales is not guilty of burglary because he lacked

the requisite intent at the time he entered the house. *Id*.  Morales entered the home to hide from the police, not for the purposes for committing another felony inside. *Id*.

Morales advances only *Martinez* as a basis for excusing default of for Ground V(M).  The Court, however, finds that Ground V(M) is not substantial within the meaning of *Martinez*. Morales fails to demonstrate that his underlying ineffective assistance of counsel claim is substantial because he fails to demonstrate that his counsel was deficient or resulting prejudice under *Strickland*.  At the time of Morales's conviction, Nevada defined burglary in relevant part as entering a house "with the intent to commit assault or battery on any person." 2005 Nev. Stat., ch. 126, § 1 at 416.

After reviewing the evidence presented at trial in the light most favorable to the prosecution and presuming the jury resolved all conflicting inferences from the evidence against the petitioner, a rational jury could have concluded that Morales had the requisite intent. Based on the evidence, Morales broke into the home through the kitchen window and immediately went to the master bedroom to find the adults in the home. ECF No. 41-1 at 23.  Once he entered the bedroom, Morales committed the crime of assault with a deadly weapon by brandishing his gun at the two adults and threatening to kill them if they failed to follow his instructions. *Id*.  The prosecution further argued at trial that the fact the Morales brought his gun, police scanner, and cellphone jammer demonstrates intent. *Id*. at 10.

Considering all of the circumstances and "applying a heavy measure of deference to counsel's judgments" as required by *Strickland*, Morales's underlying ineffective assistance of counsel related to trial counsel's failure to challenge the burglary charge in a motion for judgment of acquittal fails.  Morales cannot meet the second prong of the *Martinez* test, which requires a petitioner to show a reasonable probability that the result of the post-conviction proceedings would have been different absent post-conviction counsel's deficient performance. *See Ramirez*, 937 F.3d at 1242.

### p.  Ground VI(A) is moot.

Morales agrees with Respondents that this claim is moot. ECF No. 72 at 44-45. Accordingly, the Court denies habeas relief as to Claim VI(A).

### q.  Ground VI(C)—Ineffective Assistance of Appellate Counsel re: Failure to Prepare an Effective Appeal

In Ground VI(C), Morales argues that appellate counsel's representation constituted a deprivation of a meaningful appellate proceeding. ECF No. 12 at 53.  He asserts that appellate counsel raised only two claims for relief and failed to adequately communicate with Morales. *Id.* Morales further asserts that he is entitled to a new direct appeal with the assistance of effective appellate counsel. *Id.* at 54.

### i.  State Court Determination

The Nevada Supreme Court held:

> [Morales] claimed that counsel was ineffective for failing to prepare an effective appeal because he raised only two grounds and his argument contained fewer lines than the State's response. [Morales] failed to demonstrate deficiency or prejudice beyond what has already been discussed above. Counsel's efficacy is not measured in the number of arguments not in the number of lines any argument comprises. We therefore conclude that the district court did not err in denying this bare claim without an evidentiary hearing.

ECF No. 45-3 at 12.

### ii.  Conclusion

The Nevada Supreme Court reasonably concluded that Morales failed to demonstrate deficiency or prejudice.  Appellate counsel is not deficient because he raised two grounds for relief on appeal.  *See generally Knowles v. Mirzayance*, 556 U.S. 111 (2009) (the law does not require counsel to raise every available non-frivolous defense).  Effective appellate advocacy requires weeding out weaker issues with less likelihood of success.  The failure to present a weak issue on appeal neither falls below an objective standard of competence nor causes prejudice to the client for the same reason—because the omitted issue has little or no likelihood of success on appeal. *Id.*  Morales does not demonstrate that there were claims that appellate counsel should have raised that had a reasonable probability of success on appeal.  Accordingly, Morales is denied habeas relief as to Ground VI(C).

### r.  Ground VII—Cumulative Error

In Ground VII, Morales alleges that the cumulative effect of the errors of counsel together warrant relief. ECF No. 12 at 55.  He asserts that but for the cumulate effect of these errors, the result of trial, sentencing, and/or direct appeal would have been more favorable. *Id.*

The Nevada Supreme Court held:

> Because [Morales] failed to demonstrate deficiency on all but the false-imprisonment claim, there were no errors to cumulate. [Morales] was thus entitled to no more relief than has already been afforded on that claim.

ECF No. 45-3 at 12-13.

Morales has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. Moreover, the United States Supreme Court has not clearly established that claims of ineffective assistance of counsel can be considered cumulatively. Morales fails to show that the Nevada Supreme Court's resolution of any of his claims of cumulative error was unreasonable. The Court denies relief as to Ground VII.

### s.   Ground VIII and IX—Claims under *McCoy*

In Ground VIII, Morales alleges that the waiver of his right to maintain innocence and decision to concede charges was not knowing, voluntary, and intelligent in violation of his constitutional rights. ECF No. 12 at 56. In Ground IX, he alleges that he was deprived of his constitutional right to secured autonomy to choose his defense because his trial counsel inadequately advised him to the full consequences of conceding criminal charges to the jury. *Id.* at 60. Morales argues that Grounds VIII and IX are brought pursuant to *McCoy v. Louisiana*, 138 S.Ct. 1500 (2018), and that he demonstrates good cause and prejudice to overcome procedural default as he could not have raised Grounds VIII and IX until *McCoy* was decided.

The Ninth Circuit, however, has held that the right recognized in *McCoy* is not retroactive to cases on collateral review. *Christian v. Thomas*, 982 F.3d 1215, 1225 (9th Cir. 2020). Although Morales argues that *McCoy* should apply retroactively, the Court is bound by the Ninth Circuit's conclusion in *Christian* that the right recognized in *McCoy* is not retroactive. As such, the Court finds that Morales fails to demonstrate good cause and prejudice to overcome the procedural default of Grounds VIII and IX. The Court dismisses Grounds VIII and IX.

### t.   Ground X—Deprivation of Right to Impartial Jury

In Ground X, Morales alleges that he was deprived of his right to an impartial jury because Dixon indicated on the record that he was biased on cases when children were victims of

crimes. ECF No. 72 at 57.  In its order granting, in part, and denying, in part, Respondents' motion to dismiss, the Court gave Morales the opportunity to demonstrate cause and prejudice to overcome the default of Ground X by establishing that trial counsel's performance in failing to move to excuse the juror was constitutionally ineffective under *Strickland*. ECF No. 59 at 12-13.

It is axiomatic that the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors. *Irvin v. Dowd*, 366 U.S. 717, 222 (1961). *See also Ross v. Oklahoma*, 487 U.S. 81, 85 (1988)("It is well settled that the Sixth and Fourteenth Amendments guarantee a defendant on trial for his life the right to an impartial jury.").  The constitutional right to a trial by an impartial jury requires that those who serve on juries meet certain qualifications.  At a minimum, juries must be comprised of competent and impartial persons. *See e.g. Smith v. Phillips*, 455 U.S. 209, 217 (1982) (stating that "due process means a jury capable and willing to decide the issue solely on the evidence before it").

As stated above in relation to Ground V(D), Morales's contention that Dixon responded affirmatively that he could not be fair or impartial is belied by the record.  Dixon indicated that he "couldn't say" if the involvement of children would affect his ability to be fair, and Dixon further explained his primary concern was children testifying at trial. ECF No. 45-3 at 6.  Accordingly, the Court finds that Morales fails to demonstrate cause and prejudice to overcome the procedural default of Ground X.  The Court dismisses Ground X.

## IV.   Certificate of Appealability

This is a final order adverse to Petitioner.  Rule 11 of the Rules Governing Section 2254 Cases requires the Court to issue or deny a certificate of appealability ("COA").  Therefore, the Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).  Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right."  With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).  For procedural rulings, a COA

will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether this Court's procedural ruling was correct. *Id.*

Applying these standards, this Court finds that a certificate of appealability is unwarranted.

**V.     Conclusion**

It is therefore ordered that Petitioner Steven James Morales's amended petition for writ of *habeas corpus* under 28 U.S.C. § 2254 (ECF No. 12) is denied.

It is further ordered that a certificate of appealability is denied.

It is further ordered that the Clerk of the Court is directed to enter judgment accordingly and close this case.

DATED: September 28, 2023

_____
GLORIA M. NAVARRO
UNITED STATES DISTRICT JUDGE